313 A.2d 378.

DAVID-HODOSH CO., INC. *vs.* ANTONIO R. SANTOPADRE *et ux.*

JANUARY 3, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. The defendants, Antonio and Anna Santopadre, are husband and wife. They seek a reversal of an order entered in the Superior Court denying their motion to vacate a default judgment entered against them on September 23, 1971. Hereafter, we shall refer to the plaintiff as "Hodosh" and, where appropriate, to the defendants as "Santopadres" or "Antonio" or "Anna."

Hodosh wholesales meat and meat products. At one time or another, Antonio was a jobber, and would buy from Hodosh and sell to the retailer. Hodosh commenced its suit on June 16, 1971. Its complaint consists of two counts. The first count seeks recovery from Antonio of the balance due for goods sold and delivered to "Antonio R. Santopadre." The balance due amounts to $13,391.09. The second count seeks recovery from both Antonio and Anna on the basis of a written guarantee executed in 1962 wherein they guaranteed Hodosh the payment of any indebtedness by Antonio R. Santopadre. An attachment on Antonio's real estate was levied on June 18, 1971. About two months later, on August 14, the sheriff served the Santopadres by leaving a copy of the summons and complaint with them at their residence. The default judgment was entered on September 23.[1] Execution issued on November 5 and was served upon the husband.

On August 1, 1972, the Santopadres filed a motion seeking a removal of the default. The motion was accompanied by an affidavit executed by Anna about a month earlier, on June 30. In it she avers that their failure "to obtain counsel to properly defend this action" was attributable to Antonio's ill health. According to Anna, at the time of the service of the summons Antonio was under the care of two physicians for a heart condition and was so "physi-

---

[1] The judgment was for $17,854.79. The difference between this amount and the $13,391.09 mentioned in the first count represents a counsel fee payment which is called for in the guarantee.

cally and emotionally" exhausted that he did not realize the necessity of "promptly" obtaining counsel to represent them. Anna attributes her neglect to Antonio's health problems and the fact that at the time when service of the summons and complaint was made upon her she did not realize that she was a party to the suit. She also stated that since December, 1959, her husband's business had been operated as "A. Santopadre, Inc., a Rhode Island Corporation."

Anna's affidavit was met by a counteraffidavit by Hodosh's attorney. In it he points out that on July 8, 1971, about three weeks after his property had been attached, Antonio engaged the services of an attorney and transferred all of his real estate to his wife. He also reported that the August 14, 1971 service was a culmination of several visits by the sheriff to the Santopadres' home.

The trial justice filed a written decision. He refused to accept Anna's description of Antonio's physical and emotional state because it was "not made on personal knowledge but are hearsay." He gave no weight to Anna's assertion that A. Santopadre, Inc. had been operating since 1959 because he felt that it was not responsive to Hodosh's claim that its meats were sold and delivered to Antonio. The trial justice concluded his consideration of the Santopadres' motion by observing that, even if he assumed Anna had a good defense, there is nothing in the affidavit that would legally excuse her failure to answer the case.

An individual seeking relief from a default judgment on the basis of accident, mistake, unforeseen cause or excusable neglect has a twofold burden. He must convince the trial justice of the adequacy of the reason given for his failure to respond to the court's process and he must state a defense which is prima facie meritorious. *Metcalf* v. *Cerio*, 103 R. I. 157, 235 A.2d 669 (1967); *King* v. *Brown*, 102 R. I. 42, 227 A.2d 589 (1967).

570

Initially, we would point out that the trial justice was mistaken when he gave short shrift to the Santopadres' reference to "A. Santopadre, Inc." A close look at this portion of Anna's affidavit shows that after she alludes to the existence of the corporation, she contends that any claim Hodosh may have is against the corporation. In their brief, the Santopadres argue that the guarantee is proof of Hodosh's dealing with the corporation. Why, they said, would Hodosh insist that Antonio sign a guarantee guaranteeing his own indebtedness. Of course, if the guarantee is to assure payment for meats delivered to "A. Santopadre, Inc.", the second count seeks damages from the Santopadres in their role as guarantors. These factors, however, relate solely to the issue of a showing of a meritorious defense. Where the Santopadres really fail is on the issue of credibility as it relates to their reason for not filing a timely responsive pleading to Hodosh's complaint. They are critical of the trial justice's rejection of the affidavit on the basis of hearsay. They point out that this court in *Fiske* v. *Marino*, 100 R. I. 758, 219 A.2d 471 (1966), accepted as competent evidence the statements of an attorney which obviously were not based upon his personal knowledge. However, in *Fiske* we specifically pointed out that there was no doubt that the trial justice was satisfied as to the sufficiency of the defaultee's excuse.

We believe that when the trial justice rejected Anna's affidavit on the ground of "hearsay," he was in actuality expressing his doubt that Antonio's disabilities were as disabling as they were painted by Anna.[2] In its counteraffidavit, Hodosh made it clear that once the attachment had been levied, things at the Santopadre home quieted to the point where Antonio and Anna found it within

---

[2]In *Wright* v. *DelGiudice*, 100 R. I. 234, 213 A.2d 811 (1965), we upheld the removal of a default where the movant's physical disabilities had made it impossible for the litigant to protect her rights.

their capabilities to consult with an attorney and try to place the property beyond the reach of the creditors. In our opinion the trial justice's use of the word "hearsay" was a diplomatic way of informing the Santopadres that their actions of June 18, 1971 speak a lot louder than Anna's protestations of a year later.

Additionally, as to Anna's assertion that she did not realize that, by the process served, she had become a party to the instant litigation, we need only remark that her unawareness of the legal consequences of such service was in the nature of mistake of law rather than of fact for which no relief can be granted. *In re Wells,* 97 R. I. 178, 196 A.2d 721 (1964); *Ktorides* v. *Kazamias,* 75 R. I. 465, 67 A.2d 404 (1949); *McKeough* v. *Gifford,* 30 R. I. 192, 73 A. 1085 (1909).

We have repeatedly held that a motion to set aside a default judgment is addressed to the judicial discretion of the court and such a decision will not be disturbed except for an abuse of discretion or an error of law. We see no such abuse or error of law.

The defendants' appeal is denied and dismissed.

*Friedman, Kramer, Kessler & Andreoni, Harold I. Kessler,* for plaintiff.

*Lewis J. Pucci,* for defendants.